UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KAREN B., <br><br> Plaintiff, <br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 3:24-cv-06013-GJL <br><br> SOCIAL SECURITY DISABILITY APPEAL ORDER |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 3. This matter has been fully briefed. *See* Dkts. 14, 16, 17.

After considering the administrative record (AR) and all memoranda, the Court concludes the Administrative Law Judge (ALJ) did not err in finding Plaintiff not disabled. The Court accordingly **AFFIRMS** the Commissioner's final decision in this matter.

I.   PROCEDURAL HISTORY

Plaintiff's applications for Supplemental Security Income (SSI) benefits and Disability Insurance Benefits (DIB) were denied initially and following reconsideration. AR 72–122.

SOCIAL SECURITY DISABILITY APPEAL ORDER - 1

1  Plaintiff's requested hearing was held before the ALJ on March 28, 2024. AR 41–71. On April
2  17, 2024, the ALJ issued a written decision concluding Plaintiff was not disabled. AR 14–40. On
3  October 28, 2024, the Appeals Council declined Plaintiff's request for review, making the ALJ's
4  decision the Commissioner's final decision subject to judicial review. AR 1–6. On December 11,
5  2024, Plaintiff filed a Complaint in this Court seeking judicial review of the ALJ's decision. Dkt.
6  1. Defendant filed the sealed AR in this matter on February 10, 2025. Dkt. 5.

## II. BACKGROUND

Plaintiff was born in 1963 and was 58 years old on June 1, 2022, her alleged date of disability onset. AR 17. According to the ALJ, Plaintiff suffers from, at a minimum, the severe impairments of shoulder abnormalities, scoliosis, obesity, hypertension, sleep apnea, degenerative disc disease, knee abnormalities, spondylosis, facet arthropathy, foraminal stenosis, lumbago, and sciatica. AR 19. However, the ALJ found Plaintiff was not disabled because she had the following Residual Functional Capacity (RFC):

> to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), that does not require standing or walking more than 90 minutes at a time and 4 hours total in a workday; that does not require more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing; that does not require more than occasional pushing or pulling; that does not require more than occasional reaching above the shoulder; that does not require more than frequent handling; and that does not require exposure to hazards.

AR 23. The ALJ found Plaintiff could perform her past relevant work. AR 32.

## III. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if, and only if, the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

In her opening brief, Plaintiff argues the ALJ erred in failing (1) to reconcile a conflict between the Vocational Expert (VE)'s testimony and the Dictionary of Occupational Titles (DOT) and (2) to adequately address some of the medical evidence. Dkt. 14.

**A.    DOT Conflict**

Plaintiff contends there is a discrepancy between the DOT and the VE's testimony (relied upon by the ALJ at step four) that she could perform her past relevant work as a hospital-admitting clerk and insurance clerk despite the RFC limiting her to performing work which "does not require more than occasional reaching above the shoulder." Dkt. 14 at 4–6; AR 23.

If the VE's testimony "conflicts with, or seems to conflict with, the requirements in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Lamear v. Berryhill*, 865 F.3d 1201, 1205–06 (9th Cir. 2017) (quoting *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016)). The conflict must be "obvious or apparent" to trigger this duty, *id.*, meaning "the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez*, 844 F.3d at 808.

Here, it is neither likely nor foreseeable that the positions of hospital-admitting clerk and insurance clerk would require more than occasional overhead reaching. True, both positions require frequent reaching. *See* Selected Characteristics of Occupations Defined in the Revised DOT (SCODOT) 205.362-018; 214.362-022. But this does not create a conflict, as "not every job that involves reaching requires the ability to reach overhead." *Gutierrez*, 844 F.3d at 808;[1] *see also* SCODOT App'x C § 8 (reaching requirements are "in any direction").

---

[1] Plaintiff relies upon several out-of-circuit cases (*see* Dkt. 17 at 3–4) in arguing to the contrary but most are inconsistent with *Gutierrez*. *See e.g.*, *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2nd Cir. 2016) (rejecting *Gutierrez*-based argument). Indeed, whether an RFC's overhead reaching requirement poses, by itself, an apparent inconsistency with the SCODOT's reaching description of a greater duration appears to be the subject of a circuit split. *Compare Lockwood*, 914 F.3d at 92–93 (RFC occasional overhead reaching requirement conflicts with frequent reaching in DOT); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (same), *and Pearson v.*

Neither position involves activities which would appear to involve any overhead reaching, let alone overhead reaching on a more-than-occasional basis. A hospital-admitting clerk interviews and escorts patients and representatives, explains regulations, and enters information. *See* DOT 205.362-018. An insurance clerk verifies insurance coverage, enters data, computes bills, calls and writes to insurance companies, answers questions, and prepares forms. *See* DOT 214.362-022.

In *Gutierrez*, the Ninth Circuit found no conflict between the duties of a cashier and an overhead reaching requirement and "anyone who's made a trip to the corner grocery store knows that . . . the typical cashier never has to" reach overhead. 844 F.3d at 808. Similarly, here, the Court can rely upon conventional understanding of the tasks hospital-admitting and insurance clerks perform to conclude overhead reaching would, at most, be required on a basis so "unlikely and unforeseeable" as to not trigger the ALJ's duty. *Id.*

Plaintiff suggests *Gutierrez* is distinguishable because "the reaching demands" of those positions are not "common knowledge." Dkt. 14 at 6. But the tasks required by the positions (according to the DOT)—entering data, computing bills, communicating with patients and insurance providers—are known well enough to determine they would not involve frequent overhead reaching. As the *Gutierrez* Court said, the focus of the inquiry is on whether there is an inconsistency with "the [DOT's] listing of job requirements." 844 F.3d at 808. It may be sufficient for this purpose that a position has been commonly observed to not have requirements

---

*Colvin*, 810 F.3d 204, 211 (4th Cir. 2015) (one-handed bilateral overhead reaching limitation conflicts with DOT description of frequent reaching), *with Gutierrez*, 844 F.3d at 808; *Segovia v. Astrue*, 226 Fed. App'x 801, 804 (10th Cir. 2007). This Court is bound by Ninth Circuit precedent. The final case cited by Plaintiff, *Washington v. Comm'r of Soc. Sec. Admin.*, 906 F.3d 1353 (11th Cir. 2018), is distinguishable because it involved a conflict between an occasional fingering limitation and a DOT description requiring frequent fingering, which does not involve the sort of issue—comparing a DOT description with a limitation which goes to only a subset of that description—present here.

inconsistent with the RFC, but that is not necessary to find no conflict exists. Thus, there was no obvious or apparent conflict between the DOT and the VE's testimony.

**B.     MRI Evidence**

Plaintiff argues the ALJ erred because he "misstated, did not notice, and did not discuss" two MRI findings from 2018 and 2023. Dkt. 14 at 6.

Plaintiff has not shown prejudice in the ALJ's assessment of the MRIs. An error is "harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Plaintiff contends the ALJ's assessment of Plaintiff's subjective symptom testimony was deficient because it failed to adequately describe the results, but Plaintiff has not challenged the remaining reasons the ALJ gave for rejecting that testimony. *See* Dkt. 14 at 7–8. Those reasons include an inconsistency with physical examination results and with Plaintiff's activities of daily living, both of which were adequate upon which to reject Plaintiff's testimony. *See Smartt v. Kijakazi*, 53 F.4th 489, 496–97 (9th Cir. 2022).

Even so, Plaintiff has not shown the ALJ erred in assessing the MRIs. The ALJ "need not discuss all evidence presented," but, rather, need only articulate why he rejected evidence if it is significant and probative. *See Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) (citing and quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)).[2]

Neither of the MRIs were probative evidence. The 2018 MRI was administered nearly four years prior to the alleged onset date. *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of

---

[2] Plaintiff argues "the ALJ must articulate the supportability and consistency of probative prior medical findings" (Dkt. 14 at 7) but this is the standard applicable to medical opinions, *see* 20 C.F.R. § 404.1520c(b)(2), rather than objective medical evidence such as MRI results, *see* 20 C.F.R. §§ 404.1513(a)(1), (a)(2) (distinguishing medical opinions from laboratory findings).

limited relevance."). As for the 2023 MRI, the ALJ acknowledged the MRI and described the results as having been not significantly changed from the 2018 MRI. *See* AR 28; 1930–31. This was accurate; the results were similar. AR 1930.

The 2023 MRI said Plaintiff had "severe bilateral facet arthropathy" and "no neural foraminal stenosis" while the 2018 MRI said she had mild arthropathy and mild stenosis. *See* AR 621, 1931. But these differences are hardly probative—they mostly confirm only mild issues, as the ALJ's discussion of the medical evidence revealed (AR 27–28). The omission of the change from a "severe" arthropathy to a "mild" one does not prejudice Plaintiff, as it would be consistent with her condition improving into the relevant period.

Accordingly, the ALJ therefore did not err in failing to fully describe the findings of the 2018 and 2023 MRIs.

## IV.   CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 3rd day of June, 2025.

Grady J. Leupold
United States Magistrate Judge